HENRY M. CHANCE and Others, Suing on Behalf of Themselves and All Other Stockholders of R. HOE & CO., INC., Plaintiffs, *v.* GUARANTY TRUST COMPANY OF NEW YORK, BOUDINOT ATTERBURY and Others, Defendants.*

Supreme Court, Kings County, March 29, 1939.

* Affd. without opinion, 257 App. Div. 1006; 282 N. Y. 656.

*Samuel Zirn* [*Samuel Zirn* and *Adolph Feldblum* of counsel], for the plaintiffs.

*Neil P. Cullom* [*Neil P. Cullom* and *Henry W. Steingarten* of counsel], for the defendant Boudinot Atterbury.

STEINBRINK, J. The defendant Atterbury moves for judgment dismissing the third, fourth and sixth causes of action pleaded herein on the ground that they are barred by the six-year Statute of Limitations (Civ. Prac. Act, § 48, subd. 3, prior to its amendment by chap. 558 of the Laws of 1936). This is a stockholder's derivative action, the plaintiffs suing in the right of R. Hoe & Co., Inc., hereinafter referred to as the Hoe Company, as distinguished from its predecessor, hereinafter referred to as the old Hoe Company.

Under the third cause of action the following, in substance, is alleged: A bankers' group, dominated by the defendant Guaranty Company, caused the organization of the Hoe Company in October, 1924, by purchasing eighty-seven per cent of the stock of the old Hoe Company. The remaining thirteen per cent of such stock was held by a Mrs. Sterling, who, refusing to consent to the sale of the business and assets of the old Hoe Company on the terms offered, demanded payment in cash of the fair value of her stock, to be determined by an appraisal had pursuant to statute. Upon refusal of the old Hoe Company to comply with her demand, she instituted an appraisal proceeding. During its pendency and in or about June, 1925, a settlement was effected. By the terms thereof she was paid by the Hoe Company the sum of $250,000, over and above her *pro rata* share of the purchase price, which had been deposited in the treasury of the old Hoe Company. In addition thereto the old Hoe Company paid out $60,000 by way of appraisers' and counsel fees. These payments, totaling $310,000, are alleged to have " constituted an unlawful diversion and misuse of its [Hoe Company's] funds to pay the obligations of Guaranty Company and others, acting in association with it, and in any event constituted a grossly improvident settlement whereby Hoe's funds were wasted solely to further the interests of Guaranty Company and such associates." Liability is sought to be cast on the defendant Atterbury by reason of the fact that as an active director of the corpora-

tion he was "fully aware of and/or actually participated substantially in all of the acts and proceedings set forth in this cause of action * * *."

Under the fourth cause of action it is alleged, in substance, that "between June and October, 1928, the board of directors of the Hoe Company, then controlled by the Guaranty Company, authorized the purchase by Hoe Company of certain lands and a factory building at a purchase price of $850,000, although the value thereof did not exceed $600,000; that the property was purchased pursuant to such authorization; that the foregoing purchase was made through the influence and control which Guaranty Company and others in the bankers' group exercised over the board of directors of the Hoe Company; and that by reason thereof the funds of the Hoe were wasted to the extent of at least $250,000 * * *." Liability is sought to be cast on the defendant Atterbury by reason of the fact that he, as a director of the Hoe Company, "voted in favor of the resolution authorizing such purchase" and was "generally aware of, or could with reasonable diligence have readily ascertained the facts and circumstances set forth in this cause of action; but, in voting in favor of such resolution, * * *" he "was guilty either of gross neglect or acted in bad faith, as such" director, "in authorizing such purchase."

Under the sixth cause of action it is alleged, in substance, that Guaranty Trust Company caused Hoe Company to retain a certain law firm as its general counsel; that during the years 1928 and 1929 the said law firm performed certain legal services for which the Hoe Company was billed $48,000; that the said bills were paid by the Hoe Company pursuant to the authorization of its board of directors, although the fair and reasonable value of all such legal services should not have exceeded $13,000; and that "approval of payment to said firm of these grossly excessive bills for legal services constituted a reckless waste of Hoe's funds, and was not, as plaintiffs believe, the result of the exercise of honest judgment or good faith on the part of such defendants, but was primarily the result of gross favoritism * * *." Liability is sought to be cast on the defendant Atterbury as a director on the ground that he approved payment of such bills well knowing "that the amounts of these bills then being approved for payment were grossly excessive and equal to at least several times the fair and reasonable value of such services."

The answer of the defendant Atterbury, in addition to denials, pleads the six-year Statute of Limitations as a defense to the foregoing causes of action. In support of his motion, he submits copies of resolutions, voucher entries, contracts, bonds and mort-

gages relating to and fixing the dates of the transactions complained of in the foregoing causes of action. He does so pursuant to the following provision of rule 113 of the Rules of Civil Practice: " Where an answer is served in any action setting forth a defense which is sufficient as a matter of law, where the defense is founded upon facts established *prima facie* by documentary evidence or official record, the complaint may be dismissed on motion unless the plaintiff by affidavit, or other proof, shall show such facts as may be deemed by the judge hearing the motion, sufficient to raise an issue with respect to the verity and conclusiveness of such documentary evidence or official record."

At the very outset, plaintiffs argue that the court is powerless to entertain this motion for the reason that the documentary proof submitted in its support is not of the character contemplated by the above-quoted provision. They say that the documentary proof contemplated is that which " *prima facie*, completely and conclusively establishes the defense, without resort to extrinsic or fragmentary connecting links of proof supplied by affidavit or scattered entries or memoranda." By way of illustration, they advert to such documentary proof as a prior judgment in support of a defense of *res judicata*, a general release, a stipulation of settlement or some other document signed by the plaintiff. There is nothing in the quoted language of the rule which imposes any such limitation. The remedy of summary judgment is made available to avoid needless trials. In the absence of any dispute concerning the truth of documentary proof submitted in complete defense of the issues tendered by the plaintiff, the spirit as well as the letter of the rule requires a termination of the law suit in advance of trial. (*Levine* v. *Behn*, 169 Misc. 601.) Here the documentary proof was submitted only to fix the dates when the third, fourth and sixth causes of action accrued. With respect to the third cause of action, the facts concerning which are alleged to have occurred in or about June, 1925, the defendant Atterbury has submitted a copy of a resolution of the board of directors of the Hoe Company, dated July 23, 1925, authorizing payment of the $310,000, and copies of voucher entries from the corporate books authorizing such payments in September, October and December, 1925. With respect to the fourth cause of action alleged to have had its inception between June and October, 1928, the defendant Atterbury has submitted a copy of the agreement of purchase dated July 31, 1928, copies of voucher entries evidencing payments pursuant thereto on July 31, 1928, and November 1, 1928, and copies of two bonds and mortgages, both dated November 1, 1928, given in payment of the remainder of the purchase price. With respect to the sixth cause of action,

the facts concerning which are alleged to have occurred during 1928 and 1929, the defendant Atterbury has submitted copies of voucher entries in the corporate books evidencing payments on June 6, 1928, and November 1, 1928, on account of legal services rendered, and copies of corporate resolutions dated July 19, 1928, and December 27, 1928, approving such payments.

The summons and complaint were served on the defendant Atterbury on June 29, 1936. It is his claim that the third cause of action accrued in 1925 and was barred in 1931, and that the fourth and sixth causes of action accrued in 1928 and were barred in 1934.

The plaintiffs do not question the accuracy of the dates reflected in the documentary proof, nor do they dispute the fact that according to those dates the transactions complained of occurred more than six years prior to the commencement of this action. It is their claim that the causes of action did not accrue on those dates and are not barred by the Statute of Limitations for reasons which will be discussed shortly. The plaintiffs thus admit, albeit tacitly, that the documentary proof conclusively fixes the dates of commission of the acts described in the complaint. Under the circumstances, a denial of jurisdiction to entertain this motion would result in a frustration of the beneficent ends sought to be accomplished by summary judgment.

The plaintiffs contend that the six-year Statute of Limitations is not available to the defendant Atterbury as a plea in bar for the following reasons: *First*, the defendant Atterbury is bound by decisions of this court denying his previous motions to dismiss the cause of action herein on the ground that they were barred by the six-year Statute of Limitations. *Second*, there exist triable issues which prevent an award of summary judgment. *Third*, the ten-year rather than the six-year Statute of Limitations must be applied. *Fourth*, the causes of action herein did not accrue until the termination in April, 1934, of the tenure in office and control of the directors responsible for the allegedly wrongful acts. *Fifth*, the causes of action herein are founded on fraud and breach of fiduciary relationships; in consequence, they did not accrue until discovery by plaintiffs of the facts described in the complaint. *Sixth*, the Statute of Limitations was tolled from April, 1932, to July, 1935, during which period the plaintiffs were restrained by two orders of the Federal District Court of the Southern District of New York from bringing the within action.

Each of the foregoing contentions will be considered in the order stated. Prior proceedings: Before answering, the defendant Atterbury moved for an order dismissing the third, fourth and sixth causes of action pursuant to subdivision 6 of rule 107 of the Rules

of Civil Practice, namely, " that the cause of action did not accrue within the time limited by law for the commencement of an action thereon." The motion was denied at Special Term and the order entered thereon was affirmed by the Appellate Division (164 Misc. 346; 251 App. Div. 855) with the following memorandum: " Seven orders included in a consolidated appeal, denying defendants' motions, under rule 107, subdivision 6, of the Rules of Civil Practice, to dismiss the first, third, fourth and sixth causes of action in the complaint, on the ground that they are barred by Statutes of Limitation affirmed, with ten dollars costs and disbursements on each order, with leave to answer within ten days from the entry of the order hereon. Each cause of action is essentially equitable in its nature. They are based upon claimed breaches of duty by individuals and corporations occupying a fiduciary relationship to the corporation in behalf of which this derivative action is prosecuted. The fact that the incidents upon which they are based might be made the subject of an action at law by the corporation does not preclude the self-same facts from sustaining an action on a different or equitable theory for appropriate redress. The theory of each of the causes of action being equitable in its nature, the ten-year Statute of Limitations is applicable. (Civ. Prac. Act, § 53.) As to the third cause of action, the statute was tolled for at least the period between April, 1932, and July, 1933; and since the acts upon which it is based were not concluded until June, 1925, that action is not barred by the statute. In so far as *Potter* v. *Walker* (252 App. Div. 244) is to the contrary, it may not be followed."

In *Potter* v. *Walker* (252 App. Div. 244) the First Department held that in a stockholder's derivative action, any defense which a defendant would have if the corporation itself were the actual plaintiff may be interposed to bar the stockholder. The court accordingly applied the six-year Statute of Limitations in bar of claims charging defendants, who received no profits and against whom no accounting was sought, with acts of negligence.

While the *Potter* case was pending in the Court of Appeals, the defendant Atterbury moved before the Appellate Division for reargument or for leave to appeal to the Court of Appeals. The motion was denied without opinion (252 App. Div. 762). Thereafter the *Potter* case was affirmed by the Court of Appeals (276 N. Y. 15).

Following the said affirmance, the defendant Atterbury *applied* twice to the Appellate Division for reargument or for leave to appeal to the Court of Appeals. Both motions were denied without opinion (253 App. Div. 812; 255 id. 778).

The defendant Atterbury then served his answer and moved for judgment on the pleadings dismissing the third, fourth and sixth causes of action on the ground that they were barred by the six-year Statute of Limitations. The motion was denied at Special Term and the order entered thereon was affirmed by the Appellate Division (256 App. Div. 840) with the following memorandum: "The motion addressed to the remaining causes of action may not be determined pursuant to rule 112 of the Rules of Civil Practice. Whether or not the Statute of Limitations constitutes a bar is dependent upon a determination of the facts, and the question cannot be decided on the face of the complaint. (See 3 Carmody's New York Practice [2d ed.], § 1066; *Seely* v. *Seely*, 164 App. Div. 650, 652.) Under these circumstances, an affidavit showing the existence of such issues is proper as it does not seek to have these issues adjudicated, but simply sets them forth to show that the motion pursuant to rule 112 should be denied. It was proper to set forth by way of affidavit the facts relating to a claim that the question had already been adjudicated. So, too, the claim of the tolling of the statute, pursuant to section 24 of the Civil Practice Act, and duration thereof, also presents an issue of fact. Nowhere does it appear just when the defendant-appellant as director, voted for the resolutions authorizing the alleged unlawful diversions. In our opinion the third, fourth and sixth causes of action are based upon negligence and a money judgment would afford adequate relief. Section 48, subdivision 3, of the Civil Practice Act is applicable (*Potter* v. *Walker*, 276 N. Y. 15) and our holding to the contrary (*Chance* v. *Guaranty Trust Co.*, 251 App. Div. 855) must be deemed overruled by the subsequent decision of the Court of Appeals in the *Potter* case."

Plaintiffs assert that the law of this case with respect to the applicability of the ten-year Statute of Limitations has been established and that it remains conclusive as between the parties regardless of the subsequent decision of the Court of Appeals in the *Potter* case, declaring the law so established to be erroneous. The Appellate Division has reached a contrary conclusion. On the appeal from the order denying defendant's motion for judgment on the pleadings, the plaintiffs argued that the law of the case had been established on the previous motion. Nevertheless the Appellate Division, in affirming the order appealed from, did so not because the law of the case had been established, but on the ground that the applicability of the Statute of Limitations as a bar " is dependent upon a determination of the facts, and the question cannot be decided on the face of the complaint." From the complaint alone the court could not determine whether the statute had been tolled, nor could it determine when the defendant as director had voted for

the resolutions authorizing the alleged unlawful diversions. The court concluded with the opinion that the third, fourth and sixth causes of action are based upon negligence, and a money judgment would afford adequate relief, and that " Section 48, subdivision 3, of the Civil Practice Act is applicable (*Potter* v. *Walker*, 276 N. Y. 15), and our holding to the contrary (*Chance* v. *Guaranty Trust Co.*, 251 App. Div. 855) must be deemed overruled by the subsequent decision of the Court of Appeals in the *Potter* case." Plaintiffs would have these remarks dismissed as dictum. While they were not necessary to the decision, they were plainly intended to answer plaintiffs' argument with respect to the law of the case and to anticipate repetition of such argument in the future. This unequivocal declaration cannot be brushed aside as a gratuitous comment not intended to affect the rights of the parties. On the contrary, it must be assumed that the declaration was made to guide the court below in all subsequent proceedings relating to the same question. It must, therefore, be assumed that the six-year Statute of Limitations is properly pleaded as a bar to the third, fourth and sixth causes of action. (*Matthews* v. *Matthews*, 154 N. Y. 288; *Malnati* v. *Metropolitan Life Ins. Co.*, 254 App. Div. 681.)

Were the question to be considered *de novo*, the same result must be reached in view of the *Potter* decision. The rule there laid down is that, although a stockholder's derivative action is cognizable only in equity, the suit being in the right of the corporation, must be governed by the same Statute of Limitations that could have been interposed against the corporation had it sued on the same claim. In the fourth cause of action pleaded in that case, two of the directors were charged with negligence in approving and acquiescing in the unlawful diversion of corporate funds. They were not alleged to have participated in the receipt of any wrongful profits at the expense of the corporation. The court found that the claim was " essentially and exclusively to recover for an injury to the property of the corporation within the meaning of subdivision 3 of section 48 of the Civil Practice Act as it read prior to its amendment by chapter 558 of the Laws of 1936." (*Potter* v. *Walker*, *supra*, at p. 26.)

The causes of action under consideration relate to the unlawful diversion of corporate funds. They do not charge the defendant Atterbury with the receipt of any wrongful profits at the expense of the corporation. They simply charge him, as director, with approval and acquiescence in such wrongful diversions. The real charge against him is neglect in failing to properly discharge the duties of his office. As against him, the corporation had an adequate remedy at law. It follows, therefore, that the plaintiffs, suing in the right of the corporation, must be governed by the same Statute of

Limitations applicable against the corporation had it sued, to wit, the six-year Statute of Limitations. This must be so under the rule of the *Potter* case unless there is merit to the plaintiffs' contention that the causes of action did not accrue until 1935 or 1936, when the plaintiffs claim to have discovered the facts in suit, or in any event not prior to April, 1934, when the defendant Atterbury and his associates relinquished control over the corporation. All of this presupposes that the defendant Atterbury is charged in the complaint with fraud both in sanctioning a diversion of the corporate assets and in concealing his misconduct, for it is only in an action to procure a judgment on the ground of fraud that the cause of action is not deemed to have accrued until discovery by the plaintiff of the facts constituting the fraud. (Civ. Prac. Act, § 48, subd. 5.) The fraud comprehended by this section is " actual fraud " as distinguished from " constructive fraud." (*Pitcher* v. *Sutton*, 238 App. Div. 281; affd., 264 N. Y. 638.) Here the complaint does not charge the defendant Atterbury with fraudulent diversion of corporate funds. Nor does it charge him with fraudulent concealment of any of the facts in the case. The opposing affidavits, relying almost wholly on a reiteration of the complaint, add nothing to its scope. Stripped of all non-essential allegations, the complaint charges the defendant Atterbury with negligent approval or acquiescence in the diversion of corporate funds. (*Potter* v. *Walker*, 276 N. Y. 15.) The harm, if any, arising out of this alleged negligence, was inflicted on the corporation on the dates when the defendant Atterbury approved of or acquiesced in the acts complained of. It was on those dates that the liability, if any, for the alleged wrongs must be deemed to have accrued. " Except in cases of fraud where the statute expressly provides otherwise, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury." (*Schmidt* v. *Merchants Despatch Transp. Co.*, 270 N. Y. 287, 300.)

The plaintiffs' final contention that the Statute of Limitations was tolled from April, 1932, to July, 1935, is predicated upon two orders entered in the Federal court, one appointing temporary receivers of the Hoe Company, and the other appointing temporary trustees in its reorganization proceedings. In the order appointing the temporary receivers, dated April 21, 1932, clauses 5 and 6 read as follows: " 5. Further ordered, adjudged and decreed that all persons, firms and corporations, including sheriffs and marshals, and their officers, agents, attorneys, proctors, representatives, servants and employees, whether creditors or stockholders or claiming to be creditors or stockholders or having or claiming to have any right, title or interest of, in or to any property or properties

of said defendant, be and they hereby are enjoined and restrained from instituting or prosecuting or continuing the prosecution of any action at law or action or proceeding in equity or admiralty against said defendant in any court of law or equity or admiralty or before any association, organization, or arbitration board or arbitration committee, referee, umpire or other court or tribunal of any association or organization or otherwise, or from executing or issuing or causing the execution or issuance or the issuing out of any court of any writ, process, summons, attachment, subpœna, replevin or any other proceeding for the purpose of impounding or taking the possession of or interfering with any property owned by or in the possession of said defendant or said Receivers or owned by said defendant and in the possession of any officers, agents, servants, attorneys or representatives of said defendant, or of any other person, party, firm or corporation, and all persons, firms and corporations, including said defendant, and their officers, agents, attorneys, proctors, representatives, servants and employees, and all sheriffs, marshals and other officers and their deputies, representatives and servants be and they hereby are enjoined and restrained from removing, transferring, disposing of or attempting in any way to remove, transfer or dispose of or in any way interfere with any property, assets or effects in the possession of said defendant or of said Receivers or owned by said defendant and in the possession of any officers, agents, attorneys or other representatives of said defendant or of any other person, firm or corporation and from doing any act whatsoever to interfere with the possession and management by said Receivers of the properties of said defendant or in any way to interfere with said Receivers in the discharge of their duties or to interfere in any way with the administration and disposition in this suit of the affairs and properties of said defendant; and it is: 6. Further ordered, adjudged and decreed that until the further order of this Court said Receivers be and they hereby are authorized forthwith to take and have complete and exclusive control, possession and custody of all of the assets and properties of said defendant of every name, nature and description, and all persons, firms and corporations, including said defendant, and their officers, agents, attorneys, proctors, representatives, servants and employees, shall forthwith deliver to said Receivers all properties of every name, nature and description and wheresoever located of said defendant; and that said defendant, its officers, agents, attorneys or other representatives be and they hereby are directed upon the request of said Receivers, to indorse, transfer and set over and deliver to said Receivers any and all letters patent, patent applications and patent licenses, shares or certificates of stock, notes, bonds, bills of exchange or other documents or muniments of title, outstand-

ing in the name of or under the possession or control of said defendant or as to which said defendant has any interest, and to execute and deliver powers of attorney or proxies authorizing said Receivers to vote on any such shares or certificates; and that said Receivers be and they hereby are authorized to vote in person or by proxy any shares of stock standing in the name of said defendant." Similar provisions are contained in the order dated August 1, 1934, appointing the trustees.

The restraint in the foregoing orders affects the maintenance of actions against the corporation. While the maintenance of a stockholder's derivative action is not specifically restrained, a conditional restraint may be implied from the provision vesting in the receivers " exclusive control, possession and custody of all of the assets and properties of said defendant of every name, nature and description * * *." Stockholders complaining of wrongs committed against the corporation are thus restrained from resorting to the courts for redress unless it be shown that the receivers or trustees were requested to institute proceedings on behalf of the corporation and had refused. (*Planten* v. *National Nassau Bank*, 174 App. Div. 254; affd., *sub nom. Planten* v. *Earl*, 220 N. Y. 667.) During the pendency of the receivership and reorganization proceedings the plaintiffs could have demanded action from the receivers and trustees, and upon their refusal to act could themselves have begun the present action. Nowhere, either in the complaint or in the opposing affidavits, does it appear that the plaintiffs availed themselves of this right. Their allegation that " Irving Trust Company, the receiver and trustee was procured by those responsible for the fraudulent receivership * * * and was disqualified to act disinterestedly in bringing such a suit against those then in control," merely serves to indicate that the plaintiffs might have been justified in bringing suit without first making demand on the receivers and trustees, and this on the theory that a demand upon them would be futile or that they would not be likely to prosecute the action in good faith. (*Brinckerhoff* v. *Bostwick*, 88 N. Y. 52.) Regardless, therefore, of the attitude of the receivers and trustees, the plaintiffs were not incapacitated from bringing action by reason of the existence of the above-mentioned orders. Accordingly, their contention that the Statute of Limitations was tolled, pursuant to section 24 of the Civil Practice Act, must be overruled.

There is presented no triable issue in dispute of the fact that the third, fourth and sixth causes of action accrued more than six years prior to the commencement of this action, and, since the Statute of Limitations has not been tolled, the defendant Atterbury's motion for summary judgment is granted.